IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CAROLYN SALZAR, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:22-CV-00341-SDJ-AGD |
| v. | § § | |
| NORTH TEXAS MUNICIPAL WATER DISTRICT | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

Pending before the court is North Texas Municipal Water District's ("Defendant") Motion for Summary Judgment (Dkt. #22). After reviewing the Motion, Plaintiff's Response (Dkt. #23), Defendant's Reply (Dkt. #24), and all other relevant filings, the court recommends that Defendant's Motion for Summary Judgment (Dkt. #22) be **GRANTED**.

**BACKGROUND**

Defendant provides water, wastewater, and solid waste services to North Texas municipalities (Dkt. #22-1 at 1). Solid waste member city residents and other customers deliver municipal solid waste to one of Defendant's three transfer stations (Dkt. #22-1 at 2). Defendant's employees then transfer the municipal solid waste from the transfer stations to the regional landfill (Dkt. #22-1 at 2). Until her termination on September 24, 2019, Carolyn Salzar ("Plaintiff") was employed in Defendant's Solid Waste department (Dkt. #22-1 at 2, 5).

On February 6, 2006, Defendant hired Plaintiff as a transport driver (Dkt. #22-1 at 2). She was promoted to the position of scale operator in 2014 (Dkt. #22-1 at 2). In 2019, Plaintiff applied for the position of Transfer Station Foreman at the Parkway Transfer Station (Dkt. #22-1 at 2). Four other employees, all of whom were male, also applied for the job (Dkt. #22-1 at 2). In April

2019, Plaintiff was awarded the position (*see* Dkt. #22-1 at 2–3). Both Mike Friesen, the Solid Waste System Manager, and Keith Wright, the Transfer Station Manager, recommended that she be awarded the position (Dkt. #22-1 at 3). Wright was Plaintiff's supervisor at the time, and Friesen was Wright's supervisor (Dkt. #22-1 at 2–3).

According to Plaintiff, in a previous application cycle around 2016, Defendant had rejected Plaintiff for the station foreman position (*see* Dkt. #23-2 at 3–4, 8). In that cycle, both Plaintiff and Jerry Zumwalt, a male employee, had applied for the job, but Defendant awarded the position to Zumwalt despite the fact Plaintiff had been doing the job unofficially for months during the vacancy period (Dkt. #23-2 at 3–4). The job had become vacant following the removal of David Matthews, so Wright instructed Plaintiff to do the job in the meantime (*see* Dkt. #23-2 at 2–4). Wright also told Plaintiff that whoever got the job was going to have to "run the loader"[1] (Dkt. #23-2 at 5). After Zumwalt got the job, Plaintiff believed she was not selected because of her sex (*see* Dkt. #23-2 at 5). Specifically, she believed Defendant thought she could not run the loader because she was a woman (*see* Dkt. #23-2 at 5, 7–8). Her supervisor at that time, Guy Walker, told her that she was no longer allowed to operate the loader, which allegedly came down the chain of command from Jeff Mayfield who told Friesen that Plaintiff could not run the loader (*see* Dkt. #23-2 at 7–8). Three Defendant employees (i.e., Brian Ferguson, Eddie Lira, and Jerry Rice) told Plaintiff that they believed she was not allowed to run the loader because she was a woman (*see* Dkt. #23-2 at 9). After Zumwalt left, Plaintiff reapplied for the station foreman position and was subsequently awarded the position (Dkt. #23-2 at 4–5).

As Transfer Station Foreman, Plaintiff was responsible "for all matters pertaining to [Parkway Transfer Station,] including maintenance, administration, and operation" (Dkt. #22-1 at

---

[1] A front-end loader.

12). She also supervised on-site personnel, including the drivers, scale operators, and loader operators (*see* Dkt. #22-1 at 12; Dkt. #22-2 at 12). She was responsible for ensuring they performed their jobs appropriately and did not violate Defendant's policies (*see* Dkt. #22-2 at 15).

In April 2019, Benny Mondy, a scale operator, was transferred to the Parkway Transfer Station (Dkt. #22-1 at 3). Plaintiff was Mondy's direct supervisor (Dkt. #22-1 at 3). During review of the transfer station's security footage, Defendant discovered that Plaintiff and Mondy had taken material from the site, in violation of Defendant's Salvaging and Scavenging Policy (Dkt. #22-1 at 3, 6). The video footage shows Mondy and a commercial truck driver helping Plaintiff transfer tires into her personal vehicle (*see* Dkt. #22-2 at 25–29). Additional security footage, also from when Plaintiff was the station foreman, captured Plaintiff loading a toy motorcycle into her personal vehicle[2] (*see* Dkt. #22-1 at 6; Dkt #22-2 at 25–29).

As Defendant's employee, Plaintiff was required to follow the policies outlined in Defendant's Personnel Policy, as well as any supplemental policies, including Defendant's Salvaging and Scavenging Policy (Dkt. #22-1 at 3). On May 5, 2015, Plaintiff acknowledged by her signature that she read and understood the Defendant's Personnel Policies Manual (dated April 23, 2015) (Dkt. #22-1 at 16). The Personnel Policies Manual includes the following provision:

> Employees shall not use or allow to be used [Defendant] property for non-[Defendant] purposes. Sale of property for personal gain is prohibited. In the event that the [Defendant] Board of Directors declares property to be salvage or surplus, the property may be sold for scrap value, disposed of, traded to [a Defendant] vendor for credit or like materials, or donated to a non-profit entity. Such designation of salvage/surplus must be documented and signed. No [Defendant] employee may purchase materials from [Defendant] at less than market value.

---

[2] The record is not entirely clear as to when each video-captured scavenging incident occurred. According to the exhibit list attached to Mike Friesen's Declaration (Dkt. #22-1 at 6), one incident occurred on July 29, 2019, and the other on August 23, 2019; however, the Declaration does not specify which incident occurred on which date. Defendant's Brief indicates that the tire-scavenging incident occurred on July 29, 2019, and the toy-scavenging incident occurred on August 23, 2019 (*see* Dkt. #22 at 10–11).

REPORT AND RECOMMENDATION – Page 3

(Dkt. #22-1 at 15). In 2011, Plaintiff read and acknowledged receipt of Defendant's Salvaging and Scavenging Policy (dated November 14, 2011) (*see* Dkt. #22-1 at 3, 17; Dkt. #22-2 at 19–20). The Salvaging and Scavenging Policy, issued as a supplement to Defendant's Personnel Policies, prohibits employees from scavenging and unauthorized salvaging of materials discarded by Defendant or its customers (Dkt. #22-1 at 3–4, 17). The policy states that such action is considered theft of Defendant property (Dkt. #22-1 at 4, 17). The policy defines both salvaging and scavenging according to the Texas Commission on Environmental Quality's ("TCEQ") definitions (Dkt. #22-1 at 4, 17).

On September 24, 2019, at a meeting with Wright, Friesen, and Defendant's Human Resources Manager, Plaintiff admitted that she had improperly taken tires and a toy from the Parkway Transfer Station (Dkt. #22-1 at 3). On that same date, she was terminated for cause (Dkt. #22-1 at 5). Mondy, on the other hand, was permitted to retire in lieu of termination pursuant to Defendant's policy that allows a retirement-eligible employee to elect retirement rather than termination (Dkt. #22-1 at 4–5). Defendant presented this election of options to Mondy, and he chose retirement (Dkt. #22-1 at 4–5). Unlike Mondy, Plaintiff was not eligible for retirement at the time of her termination (*see* Dkt. #22-1 at 4–5).

Plaintiff testified at deposition that "everyone", including her supervisors (i.e., David Matthews and Keith Wright), had salvaged and scavenged (*see* Dkt. #23-2 at 11). Plaintiff also testified, however, that she never saw Mike Friesen scavenge or salvage or heard of him doing so (*see* Dkt. #23-2 at 11). Plaintiff testified that she saw Jerry Zumwalt scavenge and salvage roughly five times before she became the station foreman, but she never reported him and did not have exact dates (*see* Dkt. #22-2 at 47–48). She testified further that both Brian Ferguson and Chris Gerner had reported Zumwalt for salvaging and scavenging, and that Ferguson had reported

REPORT AND RECOMMENDATION – Page 4

Zumwalt to Keith Wright (*see* Dkt. #22-2 at 48–49).

Defendant investigated allegations made in 2019 that Zumwalt had scavenged and salvaged (*see* Dkt. #22-1 at 5). Zumwalt denied scavenging and salvaging, and Defendant found no evidence to support the allegations, even after reviewing transfer station video footage[3] (*see* Dkt. #22-1 at 5).

Plaintiff originally filed her lawsuit on September 21, 2021, in the 416th District Court of Collin County, Texas. On April 25, 2022, Defendant removed the instant action to the Eastern District of Texas, Sherman Division (Dkt. #1). In her First Amended Petition (Dkt. #1 at 42 – 45), Plaintiff asserts a discriminatory-discharge claim based on her sex under the Civil Rights Act of 1964. Plaintiff alleges that she was "dismissed for 'scavenging', although many other male employees received suspension for far more egregious offenses" (Dkt. #1 at 43). On January 25, 2023, Defendant filed the instant Motion for Summary Judgment (Dkt. #22). On February 15, 2023, Plaintiff filed her Response (Dkt. #23). On February 22, 2023, Defendant filed its Reply (Dkt. #24).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is

---

[3] The record is unclear as to which transfer station's video footage was reviewed. Zumwalt became the station foreman for the Custer Road Transfer Station in 2019, but he previously worked at the Parkway Transfer Station as foreman (Dkt. #22, Exhibit 1-A at 5). Defendant's brief represents that, according to Mike Friesen's Declaration, Defendant reviewed video footage of the transfer station "where Zumwalt was supervisor," which could have been either the Custer Road Transfer Station or the Parkway Transfer Station (*see* Dkt. #24 at 6). Friesen's Declaration is ambiguous as to exactly which transfer station's video footage was reviewed, if not both (*see* Dkt. #22, Exhibit 1-A at 5).

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. And the Court need only consider the record materials actually cited by the parties, though the Court may consider the entire record. Fed. R. Civ. P. 56(c)(3).

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

### *Evidence Presented*

Defendant submits the following evidence in support of its Motion for Summary Judgment:

Exhibit A (Dkt #22-1 at 1–6): Declaration of Mike Friesen;

Exhibit A-1 (Dkt. #22-1 at 8): Payroll Status Form;

    Exhibit A-2 (Dkt. #22-1 at 10): March 25, 2019 Memorandum;

    Exhibit A-3 (Dkt. #22-1 at 12): North Texas Municipal Water District Job Description;

    Exhibit A-4 (Dkt. #22-1 at 14–17): District Policies and Acknowledgements;

    Exhibit A-7 (Dkt. #22-1 at 21): Parkway Transfer Station SOP Excerpt;

    Exhibit B (Dkt. #22-2): Deposition Testimony of Carolyn Salzar;

    Exhibit C (Dkt. #22-3): Plaintiff's Answers to Defendant's Interrogatories; and

    Exhibit D (Dkt. #22-4): EEOC Charge Detail Inquiry.

  Plaintiff submits the following evidence in opposition to the Motion:

    Exhibit A (Dkt. #23-1): Excerpts from Declaration of Mike Friesen; and

    Exhibit B ( Dkt. #23-2): Deposition Testimony of Carolyn Salzar.

  Plaintiff raised no objections to Defendant's summary judgment evidence. Defendant asserted objections to Plaintiff's summary judgment evidence, but Plaintiff did not respond to those objections.

### *Defendant's Objections to Plaintiff's Summary Judgment Evidence*

  Defendant objects to a text message from Brian Ferguson to Plaintiff (Dkt. #23-2 at 14). According to Plaintiff's deposition, Plaintiff received a text message from Ferguson stating "[o]n many occasions Jerry Zumwalt loaded my truck up and asked if he could pick it up at my house after work" (Dkt. #23-2 at 14). Plaintiff relies on this statement to argue that Ferguson saw Zumwalt salvage or scavenge in violation of Defendant's policy (*see* Dkt. #23 at 7). In other words, Plaintiff relies on the statement's asserted truth that Ferguson saw Zumwalt load Ferguson's truck with presumably scavenged items. Defendant objects that the text message is an unsubstantiated and conclusory statement as well as hearsay. The court agrees. Plaintiff testified that she did not

recall when she saw Zumwalt scavenge and salvage. Further, the text message itself was not offered as an exhibit. The objection is sustained. With respect to the remaining objection, the court notes that it did not rely on objectionable statements in reaching its conclusion.

## ANALYSIS

Plaintiff asserts a discriminatory-discharge claim based on her sex under the Civil Rights Act of 1964. Specifically, she alleges that she was "dismissed for 'scavenging', although many other male employees received suspension for far more egregious offenses" (Dkt. #1 at 43). Defendant argues Plaintiff's claim fails as a matter of law because: (1) Plaintiff cannot establish a prima facie case of sex discrimination; (2) Defendant had a legitimate, non-discriminatory reason for its decision to terminate Plaintiff; and (3) there is no evidence that Defendant's articulated reason for termination was pretextual.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discharg[ing] an individual . . . because of such individual's sex[.]" 42 U.S.C. § 2000e-2(a)(1). Such discrimination "can be established through either direct or circumstantial evidence." *Crivelli v. Montgomery County Emergency Services District Number 7*, 2023 WL 2823065 at *1–2 (5th Cir. 2023) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). Since Plaintiff relies on circumstantial evidence, the court applies the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Id.*

Plaintiff must first make a prima facie case of discrimination by showing she "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably in nearly identical circumstances." *Id.* (citing *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997–98 (5th Cir. 2022). Then the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (citing *McDonnell*

*Douglas Corp.*, 411 U.S. at 802, 1824). "If the employer does so, [Plaintiff] must prove that the reason was pretext for discrimination." *Id.*

As briefed by both parties, Plaintiff has satisfied the first three elements of her prima facie case. Plaintiff was a female employee who was qualified for the transfer station foreman position, and her employment was terminated. The parties dispute, however, whether Plaintiff has met the fourth element—that other similarly situated male employees were treated more favorably in nearly identical circumstances. The Fifth Circuit has held that "employees are generally not similarly situated if they have different supervisors, different work responsibilities, work for different divisions of a company, committed dissimilar violations, or were the subject of adverse employment actions too remote in time from that taken against the plaintiff." *Cardiel v. Apache Corp.*, 559 Fed. App'x 284, 288 (5th Cir. 2014). "An employee who offers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken under nearly identical circumstances for nearly identical conduct." *Id.* (internal quotations marks omitted) (citing *Lee v. Kan City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009)). Plaintiff is unable to establish a prima facie case because her proffered fellow employee comparators, Benny Mondy and Jerry Zumwalt, do not meet these standards. Accordingly, Plaintiff fails to raise a genuine issue of material fact for the fourth element of her Title VII claim.

### A.  Benny Mondy is not Similarly Situated.

Though Benny Mondy also scavenged in violation of Defendant's policy, he was not similarly situated to Plaintiff because he was a subordinate employee with different work responsibilities. *See Cardiel,* 559 Fed. App'x at 288; *see also Lee v. Kan. City S. Ry. Co*, 574 F.3d 253, 260 (5th Circ. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job

or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.") (citations omitted). Mondy was a scale operator at the Parkway Transfer Station, while Plaintiff was Mondy's direct supervisor as the transfer station foreman. They therefore did not share the same immediate supervisor. However, this fact alone is not dispositive because "it is sufficient [in showing nearly identical circumstances] that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Id.* at 261. It is unclear whether Keith Wright and Mike Friesen, who were part of the decision to terminate Plaintiff, gave Mondy the option to retire in lieu of termination themselves. Nevertheless, Plaintiff's job responsibilities were distinctly different from Mondy's. Plaintiff not only supervised Mondy, but she also supervised other on-site personnel, including the drivers and loader operators. Plaintiff was responsible for ensuring they performed their jobs appropriately and did not violate Defendant's policies. Plaintiff even took a week-long class to become certified in the TCEQ's rules and regulations to prepare for the supervisory role (*see* Dkt. #22-2 at 21). There is no evidence that Mondy's job required this same level of industry experience, education, and managerial oversight.

Plaintiff contends Mondy is a similarly situated comparator because Mondy and Plaintiff both reported to the same supervisors, were both subject to the same employment standards, and because Defendant's policy applied to all employees regardless of position (*see* Dkt. #23 at 6). Plaintiff relies on *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531 (S.D.N.Y. 1986) to support her contention, but she misapplies *Mazzella*'s holding. Despite being non-binding authority, *Mazzella* held the following:

> Employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have

> reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*RCA Global Communications, Inc.*, 642 F. Supp. at 1547 (citations omitted). Plaintiff's argument ignores the apparent differences in Plaintiff's and Mondy's work responsibilities. Plaintiff attributes no significance whatsoever to her supervisory position over Mondy, and, following her line of reasoning, every male Defendant employee who scavenges, regardless of job position, would be deemed similarly situated by virtue of violating Defendant's scavenging policy. However, as held in *Mazzella*, employees are not similarly situated "merely because their conduct might be analogized." *Id.* at 1547. The differences in work responsibilities must also be considered. *See Cardiel,* 559 Fed. App'x at 288 (5th Cir. 2014); *see Lee*, 574 F.3d at 260 (5th Cir. 2009).

Ultimately, the difference in Plaintiff's and Mondy's work responsibilities did not account for the difference in treatment received. Mondy was given the option to retire in lieu of termination because Mondy was eligible for retirement. And, notably, Mondy would have been terminated had he not opted to retire (*see* Dkt. #22-1 at 5). Plaintiff was not given the option to retire, as provided by Defendant's retirement policy, because she was not of retirement age. When she was terminated in 2019, Plaintiff was fifty-six years old and thus ineligible for retirement (*see* Dkt. #22-2 at 36). This difference in retirement eligibility further demonstrates how Mondy was not similarly situated to Plaintiff. *See Davis v. Motiva Enterprises, LLC,* 2016 WL 8677183, at *10 (E.D. Tex. September 2, 2016) (finding the plaintiff not similarly situated to defendants who were permitted to retire in lieu of termination because the plaintiff was ineligible for retirement) (citing *Ramon v. Cont'l Airlines, Inc.*, 153 Fed. App'x 257, 259 (5th Cir. 2005); *Nelson v. Gen. Elec. Co.*, 2 Fed. App'x 425, 431 (6th Cir. 2001); *Thomas v. Hilts*, No. 224690, 2002 WL 234757, at *4 (Mich.

App. Feb. 15, 2002)).

### B. Jerry Zumwalt is not Similarly Situated.

Jerry Zumwalt is also not an adequate comparator because Defendant investigated scavenging allegations brought against him in 2019 and found no evidence to support such allegations. In other words, Zumwalt's alleged policy violations, which drew no adverse employment decision, were not "nearly identical" to Plaintiff's misconduct because they were unsubstantiated. *See Lee*, 574 F.3d at 260 ("And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions."); *see Davis v. Southern Wine & Spirits of Ill.*, 2018 WL 2432103, at *4 (N.D. Ill. May 30, 2018) (finding employee against whom accusation of sleeping at work was unsubstantiated not similarly situated to the plaintiff who was terminated for sleeping during work hours) (citing *Tate v. Ancell*, 551 Fed. App'x 877, 889 (7th Cir. 2014)). "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 (citation omitted). Unlike Plaintiff, who admitted that she improperly took property from the transfer station, Zumwalt denied scavenging and salvaging. In addition, Defendant found no video evidence of Zumwalt salvaging or scavenging, while Plaintiff was caught red-handed scavenging on transfer station security footage. The substantiation of Plaintiff's misconduct accounts for the difference in treatment received from Defendant, and therefore Plaintiff and Zumwalt are not similarly situated employees. *See id.*

Plaintiff argues that "Zumwalt's violation as witnessed by [Plaintiff] and [Brian Ferguson] was one example of a systemic violation of the scavenging/salvaging rule at the District which had

previously gone unenforced" (Dkt. #23 at 7). To reach this conclusion, Plaintiff relies partly on inadmissible hearsay (i.e., Ferguson's text message), as discussed above, and partly on her own alleged observations of Zumwalt. The problem with Plaintiff's own alleged observations, however, is that she never reported Zumwalt while she was employed by Defendant, and so Defendant was presumably unaware of the alleged misconduct (*see* Dkt. #22-1 at 5). Plaintiff's deposition testimony also fails to specify when other employees (i.e, Ferguson and Chris Gerner) reported Zumwalt for scavenging, what sort of misconduct their allegations entailed, and what work responsibilities Zumwalt had at the time. Thus, Plaintiff's vague and conclusory testimony is insufficient to create a fact issue, and Plaintiff has yet to offer competent disparate-treatment evidence showing Defendant turned a blind eye to nearly identical conduct under nearly identical circumstances. *See Luna*, 59 F.4th at 716; *see Cardiel*, 559 Fed. App'x at 288.

### C. Theft is a Legitimate Nondiscriminatory Reason and There is no Evidence of Pretext.

Even if Plaintiff could establish a prima facie case, she fails to show that Defendant's nondiscriminatory reason for her termination (i.e., theft of Defendant property via scavenging) was a pretext for sex discrimination. "Theft is a legitimate rationale for termination." *Lawson v. AT&T Mobility Servs., L.L.C.*, 800 Fed. App'x 272, 273 (5th Cir. 2020) (citing *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 274 (5th Cir. 2006)). Defendant's proffered explanation for terminating Plaintiff is not false and is in fact verified as true by Plaintiff herself. *See id.* Moreover, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other [employees outside of the protected class] because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *See Turn v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (quoting *Upshaw v. Dallas Heart Group*, 961 F.Supp. 997, 1002 (N.D. Tex. 1997)). Plaintiff has offered no evidence suggesting that Defendant enforced its anti-

scavenging policy differently in substantiated cases involving male employees. On the contrary, Defendant's decision to terminate Benny Mondy's employment for nearly identical misconduct suggests equal treatment but-for Mondy being retirement eligible.

Furthermore, Plaintiff's subjective belief that she was previously discriminated against when she was allegedly rejected for the foreman position around 2016 is insufficient to establish a pretext for her current discriminatory-discharge claim. *See O'Brien v. Lucas Assocs. Pers., Inc.*, 127 Fed. App'x 702, 707 (5th Cir. 2005) ("Neither a tenuous inference . . . nor the plaintiff's subjective belief . . . is sufficient to establish pretext.") (citations omitted). It logically follows that the subjective belief of other employees (i.e., Brian Ferguson, Eddie Lira, and Jerry Rice) that Plaintiff was not allowed to operate equipment due to her sex is likewise insufficient to show pretext. *See id.* Plaintiff's deposition testimony introduces a convoluted chain of vague statements allegedly passed down Plaintiff's chain of command informing her that she was no longer allowed to operate the "loader" (*see* Dkt. #23-2 at 5–8). However, such testimony seems rife with speculation and is, at best, tenuous in suggesting Plaintiff was not selected for the foreman position because of her sex. Plaintiff's belief is further undermined by the fact that she was later recommended for and promoted to the position. Such far removed speculation will not preserve her discriminatory-discharge claim on summary judgment.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends Defendant's Motion for Summary Judgment (Dkt. #22) be **GRANTED**. Plaintiff's claims should be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of August, 2023.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE